IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>    Plaintiff,<br><br>  vs<br><br>ORIGINAL HOT DOG SHOPS, INC. d/b/a ORIGINAL HOT DOG SHOP, and FOOD GALLERY ORIGINAL, INC. d/b/a ORIGINAL HOT DOG SHOP,<br>    Defendants. | Civil Action No. 06-1243 |

REPORT AND RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the defendants' motion to dismiss the amended complaint (Document No. 5) be denied.

II. Report:

Presently before the Court is the defendants' motion to dismiss the amended complaint pursuant to F.R.Civ.P. 12(b)(1), 12(b)(6) and 12(b)(7). For reasons discussed below, the defendants' motion to dismiss should be denied.

The plaintiff, Equal Employment Opportunity Commission ("EEOC"), has filed an amended race discrimination complaint against defendants Original Hot Dog Shops, Inc. and Food Gallery Original, Inc., both doing business as Original Hot Dog Shop. The EEOC contends that on or about September 22, 2005, the defendants terminated the employment of Anton Rumph, the Charging Party, and a class of similarly-situated African American employees on the basis of their race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.[1] The Court's

---

1. Anton Rumph, the Charging Party, filed a charge of discrimination with the EEOC on or about February 3, 2006, alleging that his employer, the Original Hot Dog Shop, discharged him from his position of counter worker because of his race. See, Exhibit A to the EEOC's appendix.

jurisdiction is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.

In its amended complaint, the EEOC complains that in September 2005, Anton Rumph and a class of similarly-situated African American individuals were employed by the defendants at the Original Hot Dog Shop located at the food court on the campus of Carnegie Mellon University (the "CMU shop"); that both named defendants are owned by Sydney Simon, whose son, Bruce Simon, acted as General Manager for the CMU shop and for another Original Hot Dog Shop located in the Oakland neighborhood of Pittsburgh (the "Oakland shop"); that on or about September 17, 2005, the manager of the CMU shop (Addison Harrison) resigned, after which Mr. Simon hired a new manager for the CMU shop; that on or about September 22, 2005, Bruce Simon ordered the new manager to discharge all African American employees located at the CMU shop, purportedly because CMU students did not like to be waited on by African Americans; that in response to the directive, the new manager discharged some of the African American employees, but then he resigned in protest, believing the directive was racially motivated; and that following the new manager's resignation, Bruce Simon discharged the remainder of the African American employees located at the CMU shop for such proffered reasons as customer complaints, poor performance, and/or lack of proper training.

In response to the amended complaint, the defendants have moved to dismiss it pursuant to F.R.Civ.P. 12(b)(1), 12(b)(6) and 12(b)(7). In support thereof, the defendants argue that the Court lacks subject matter jurisdiction over this matter, as Anton Rumph was employed by defendant Food Gallery Original, Inc. ("Food Gallery"), which did not employ the requisite number of employees, nor engage in commerce, so as to meet the statutory definition of an "employer" under Title VII. The defendants also argue that there is no basis upon which a class action may be maintained in this matter, as the alleged class of Anton Rumph and "similarly-situated African American employees" fails to meet the numerosity requirement of F.R.Civ.P. 23. As an alternate grounds for dismissal of the amended complaint, the defendants insist that the EEOC has failed to join necessary parties under F.R.Civ.P. 19.

A Rule 12(b)(1) motion to dismiss "may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." Gould Electronics Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000). In reviewing a "facial attack", which is based on the legal sufficiency of the claim, the Court "must only consider the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." Id. Conversely, in reviewing a "factual attack", as here, where a challenge is based on the sufficiency of jurisdictional fact, "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case." See, Carpet Group Int. v. Oriental Rug Importers, 227 F.3d 62, 69 (3d Cir. 2000). In such a scenario, "the court may consider evidence outside the pleadings", Gould Electronics, 220 F.3d at 176, as "no presumptive truthfulness attaches to plaintiff's allegations". Carpet Group, 227 F.3d at 69.

In support of the defendants' motion to dismiss, Bruce Simon has submitted an affidavit dated October 12, 2006 (w/Document No. 5), asserting that at the direction of his father, Sydney Simon, three separate entities were incorporated under Pennsylvania law as follows: in 1960, the Original Hot Dog Shop, Inc. was incorporated, and from 1996 to the present, it has engaged in the business of selling hot dogs, french fries, related foodstuffs and beverages at the Oakland shop; in 1996, the Food Gallery was incorporated, and from 1996 through June of 2006, it operated a fast food restaurant selling hot dogs, french fries, related foodstuffs and beverages at the CMU shop; and in 1997, the Plum Original Inc. was incorporated, and from 1997 to the present, it has operated a fast food restaurant selling hot dogs, french fries, related foodstuffs and beverages (the "Plum shop") (affidavit of Bruce Simon at ¶¶ 2-4).

Bruce Simon avers that since 1989, his father, Sydney Simon, has been physically unable to work at any of the three food shops, such that at all times relevant to this matter, his sister, Terry Campasano, has been responsible for the management of the Oakland shop, while he has primarily devoted his time to managing the Plum shop (Id. at ¶¶ 5-6); that unlike the Oakland shop and the Plum shop which are relatively large facilities, the CMU shop

was limited in size, such that its day-to-day business, including the hiring and firing of its employees, was conducted by on-site managers (Id. at ¶ 7); that neither Sydney Simon, nor Terry Campasano were involved in the day-to-day operations at the CMU shop (Id. at ¶ 9); and that he (Bruce Simon) had no involvement in the day-to-day operations or management at the CMU shop, except when he served as a stand-in there in September 2005 (due to the resignation of the on-site manager), at which time he discharged Anton Rumph (Id. at ¶¶ 9,10, 16).

With respect to the CMU shop, Bruce Simon avers that CMU was originally responsible for the general supervision of operations of all food purveyors at its food court, but in 2000, CMU contracted with Parkhurst Corporation ("Parkhurst") to supervise businesses there (Id. at ¶ 12); that during the operation of the CMU shop, CMU and/or Parkhurst expressly retained the right to require the Food Gallery to terminate the services of any employee whose conduct was objectionable (Id. at ¶ 13); that in September 2005, Parkhurst's on-site manager at the CMU food court, Jane Farringer, informed the Food Gallery by email that complaints had been received from CMU students, who believed that employees at the CMU shop were not providing service to customers and were engaging in non-food service related activities (Id. at ¶ 14); that upon receiving her email, Bruce Simon telephoned Ms. Farringer, who advised him that she would close down operations at the CMU shop unless immediate action was taken to remedy the students' complaints (Id. at ¶ 15); and that due to the threatened termination of operations at the CMU shop, Bruce Simon went to the CMU shop, where he terminated the employment of Anton Rumph and five other counter employees who he believed were responsible for the students' complaints (Id. at ¶ 16).

In his affidavit, Bruce Simon asserts that the Food Gallery has never been engaged in interstate commerce, as the foodstuffs used in its operation at the CMU shop were purchased from the Original Hot Dog Shop, Inc. and were sold to residents of CMU or the City of Pittsburgh (Id. at ¶ 8). He also avers that while the Food Gallery and the Original Hot Dog Shop, Inc. shared common office space at the Oakland location, each entity maintained separate books

and records, filed separate state and federal income tax returns, maintained separate bank accounts, and operated as distinct corporate entities (Id. at ¶ 11).

In moving to dismiss the amended complaint, the defendants argue that the Food Gallery, the entity from which Anton Rumph was discharged, cannot be deemed an "employer" for purposes of Title VII.  Under Title VII, the term "employer" means:

> ... a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person...

42 U.S.C. § 2000e(b).

According to the defendants, the Food Gallery operations at the CMU shop did not encompass the requisite fifteen employees for each working day as required by Title VII. Significantly however, the EEOC has produced a list of Food Gallery employees during the period from July 2005 through November 2005, which shows that the Food Gallery employed thirty-six people, at least seventeen of whom were employed for five months or more.[2]  Notably, Bruce Simon makes no mention of the number of employees working each day at the CMU shop in his affidavit.  Thus, based on the record before us, we cannot say that the Food Gallery failed to employ the requisite fifteen employees for purposes of Title VII.

Furthermore, the EEOC insists that a factual question exists as to whether the Food Gallery and the Original Hot Dog Shops, Inc. operate as a "single employer".  To determine if two distinct entities should be considered a single employer for purposes of Title VII, the Third the Circuit Court of Appeals has developed a three-part test. In <u>Nesbit v. Gears Unlimited, Inc.</u>, 347 F.3d 72 (3d Cir. 2003), <u>cert. denied</u>, 124 S.Ct. 1714 (2004), the Court stated:

> We ... will consider a company and its affiliates a single employer under Title VII (1) when a company has split itself into entities with less than fifteen employees intending to evade Title VII's reach, or (2) when a parent company has directed the subsidiary's discriminatory act of which the

---

2.   See, Exhibit D to the EEOC's appendix.

> plaintiff is complaining...
>
> Absent either of the first two situations, we shall look to the factors courts use in deciding whether substantively to consolidate two or more entities in the bankruptcy context... [This] test at base seeks to determine whether two or more entities' affairs are so interconnected that they collectively caused the alleged discriminatory employment practice.

Id. at 85-86.

The first two factors listed above do not appear to be applicable here. That is, the EEOC has not alleged, nor shown that the defendants split themselves into separate entities to evade Title VII's requirement that "an employer" have at least fifteen employees. In addition, no evidence shows that the defendants have a parent-subsidiary relationship, or that one of them ordered the other to engage in a discriminatory act.

As to the third factor above -- the interconnectedness of the entities -- the Court in Nesbit stated: "[it] rests on the degree of operational entanglement -- whether operations of the companies are so united that nominal employees of one company are treated interchangeably with those of another." 347 F.3d at 87. As explained in Nesbit:

> Relevant operational factors include (1) the degree of unity between the entities with respect to ownership, management (both directors and officers), and business functions (e.g., hiring and personnel matters), (2) whether they present themselves as a single company such that third parties dealt with them as one unit, (3) whether a parent company covers the salaries, expenses, or losses of its subsidiary, and (4) whether one entity does business exclusively with the other.

Id.

As gleaned from another affidavit submitted by Bruce Simon dated June 1, 2006, the Food Gallery and the Original Hot Dog Shop, Inc. are both owned by Sidney Simon, and both entities do business under the name "The Original Hot Dog Shop".[3] In his affidavits, Bruce Simon asserts that prior to the resignation of Addison Harrison as manager of the CMU shop, he

---

3. See, Exhibit C to the EEOC's affidavit.

(Simon) was not involved in the operation or management of the CMU shop.  However, Susan Kelly, an EEOC investigator, has presented an affidavit dated October 24, 2006, wherein she avers that during her investigation into Anton Rumph's charge of discrimination in this matter, she interviewed Scott Berry, an employee of the defendants, who informed her that Bruce Simon made staffing decisions for the CMU shop.[4]  Scott Berry also advised Susan Kelly that while he was hired to work at the Oakland shop, he worked about one day a week at the CMU shop as an alternate manager to Mr. Harrison.[5]  Based on the foregoing, it appears that the defendants have a certain degree of "operational entanglement", such that a factual question exists as to whether they operate as a single employer.  Thus, the defendants' motion to dismiss on grounds that the Food Gallery failed to employ the requisite number of employees should be denied.

        Similarly, the defendants' argument that the Food Gallery cannot be deemed a Title VII "employer" because it was not engaged in interstate commerce should be denied at this juncture, as the record is not sufficiently developed. Bruce Simon asserts that the "foodstuffs used in the operation of the Food Gallery were purchased from the Original Hot Dog Shop, Inc. and all of the foodstuffs were sold to residents of CMU or the City of Pittsburgh."[6]  However, the defendants do not claim that none of the foodstuffs used at the CMU shop came through interstate commerce.  Further, it seems unlikely that only residents of CMU or Pittsburgh purchased food at the CMU shop, since numerous non-residents of Pittsburgh visit CMU or its students on a frequent basis.  Although Bruce Simon avers that the Food Gallery has never been engaged in interstate commerce[7], he does not make a similar claim as to the Original Hot Dog Shop, Inc.  Since a material issue of fact exists as to whether the defendants operated as a single

---

4. See, affidavit of Susan Kelly at ¶ 7, attached as Exhibit E to the EEOC's appendix.

5. Id.

6. See, affidavit of Bruce Simon dated October 12, 2006 at ¶ 8.

7. Id.

employer, it would be premature to dismiss the amended complaint on grounds that the Food Gallery is not an "employer" for purposes of Title VII.

The defendants also argue that the amended complaint should be dismissed, as there is no basis upon which a class action may be maintained in this matter. According to the defendants, the purported class of Anton Rumph and "similarly situated African American employees" entails only six members, such that it fails to meet the numerosity requirement of F.R.Civ.P. 23.

Rule 23 mandates that before a suit may be certified as a class action, all four requirements of Rule 23(a), and one subsection of Rule 23(b) must be satisfied. Stewart v. Abraham, 275 F.3d 220, 226 (3d Cir. 2001). Under Rule 23(a), the prerequisites to maintaining a class action are: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

Significantly, "Rule 23 is not applicable to an enforcement action brought by the EEOC in its own name and pursuant to its authority under [Title VII] to prevent unlawful employment practices." General Tel. Co. of the Northwest v. EEOC, 446 U.S. 318, 323 (1980). Indeed, the Supreme Court has stated that the EEOC's authority to bring a Title VII suit in its own name for the purpose of securing relief for a group of aggrieved individuals "is in no way dependent upon Rule 23." Id. at 324. Thus, to the extent the defendants' motion to dismiss is premised on the EEOC's inability to satisfy Rule 23, it lacks merit.

In the alternative, the defendants argue that the amended complaint should be dismissed because CMU and Parkhurst, which are said to have supervised business at the CMU food court, are necessary and indispensable parties. We disagree.

Federal Rule of Civil Procedure 19 governs the determination of whether joinder of a party is compulsory. Rule 19, comprised of subdivisions (a) and (b), contemplates a two-

step analysis. The Third Circuit Court of Appeals has explained:

> A court must first determine whether a party should be joined if "feasible" under Rule 19(a). If the party should be joined but joinder is not feasible because it would destroy [subject matter jurisdiction], the Court must then determine whether the absent party is "indispensable" under Rule 19(b). If the party is indispensable, the action therefore cannot go forward.

Janney Montgomery Scott v. Shepard Niles, 11 F.3d 399, 404 (3d Cir. 1993). If it is determined that an absent party is not "necessary" for a just adjudication of a case under Rule 19(a), the Court need not consider the factors set forth in Rule 19(b). Id.

> Rule 19(a) provides in pertinent part that:
>
> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest...

Thus, in this case, CMU and Parkhurst are "necessary" parties if, in their absence, (1) complete relief cannot be accorded the present parties, or (2) they claim an interest in the matter, and disposition of this action would prejudice their ability to protect their own interests, or any of the present parties would be subject to a substantial risk of multiple or inconsistent obligations due to their interests.

Under Rule 19(a)(1), we must first determine if complete relief can be accorded among those who are already parties to this action. Angst v. Royal Maccabees Life Insurance Co., 77 F.3d 701, 705 (3d Cir. 1996). "Completeness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought." Id. In this case, it appears that complete relief can be accorded among the present parties. That is, the race discrimination claims asserted against the defendants on behalf of

9

Anton Rumph and similarly situated African Americans may be determined in the absence of CMU and Parkhurst, neither of which was Mr. Rumph's employer.

In addition, CMU and Parkhurst are not "necessary" parties under Rule 19(a)(2), as neither entity claims an interest in this matter.  Under Rule 19(a)(2), "the interest relating to the subject of the action must be more than a mere financial interest."  <u>Continental Casualty Co. v. Diversified Industries, Inc.</u>, 884 F.Supp. 937, 944 (E.D.Pa. 1995) (citations omitted).  Rather, to satisfy the "interest" component of Rule 19(a)(2), "an absent party must have a legally protected interest, and not merely an interest in convenience."  <u>Id.</u>  Here, the record fails to show that CMU or Parkhurst has a legally protected interest relating to this action.  Hence, CMU and Parkhurst are not necessary parties under Rule 19(a), nor indispensable parties under Rule 19(b).

Therefore, it is recommended that the defendants' motion to dismiss the amended complaint (Document No. 5) be denied.

Within thirteen (13) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

                      Respectfully submitted,

                      <u>s/ ROBERT C. MITCHELL</u>
                      United States Magistrate Judge

Dated: December 19, 2006